10 U.S. 330
 6 Cranch 330
 3 L.Ed. 239
 THE BRIGANTINE AMIABLE LUCY
v.
THE UNITED STATES.
 February Term, 1810
 
 1
 ERROR to the district court of the United States, for the district of Orleans, to reverse the sentence of that court which condemned the brigantine Lucy, for importing a slave from the West Indies, contrary to the act of congress of the 28th of February, 1803, vol. 6. p. 212. entitled 'An act to prevent the importation of certain persons into certain states, where, by the laws thereof, their admission is prohibited;' by the first section of which it is enacted, that no master of a vessel, 'or any other person, shall import or bring, or cause to be imported or brought, any negro, mulatto, or other person of colour, not being a native, a citizen, or registered seaman of the United States, or seamen, natives of countries beyond the Cape of Good Hope, into any port or place of the United States, which port or place shall be situated in any state which by law has prohibited, or shall prohibit, the admission or importation of such negro,' &c.
 
 
 2
 And by the second section it is enacted, 'that if any such negro or mulatto, or other person of colour, shall be landed from on board any ship or vessel, in any of the ports or places aforesaid, or on the coast of any state prohibiting the admission or importation as aforesaid, the said ship or vessel,' &c. 'shall be forfeited to the United States.'
 
 
 3
 By the seventh section of the act of March 26, 1804. 'erecting Louisiana, into two territories, and providing for the temporary government thereof,' (Laws U. S. vol. 7. p. 116.) it is enacted, that the above act of 28th of February, 1803, 'shall extent to, and have full force and effect in, the above mentioned territories.'
 
 
 4
 And the tenth section of the same act (vol. 7. p. 119.) prohibits the importation of slaves into the territory of Orleans, from any place without the United States, under the penalty of 300 dollars; and also prohibits, under the like penalty, the importation from the United States of any slave imported into the United States since the first of May, 1798, and of all other slaves except by a citizen of the United States removing into the territory for actual settlement, and being the bon a fide owner of such slaves, at the time of such removal.
 
 
 5
 By the fourth section of the act of March 2, 1805, vol. 7. p. 281. entitled, 'An act further providing for the government of the territory of Orleans,' it is enacted, 'that the laws in force in the said territory at the commencement of this act, and not inconsistent with the provisions thereof, shall continue in force until altered, modified or repealed by the legislature,' by that act established. And the eighth section enacts, 'that so much of an act, entitled, an act erecting Louisiana into two territories, and providing for the temporary government thereof, as is repugnant with this act, shall, from and after the first Monday of November next, be repealed; and the residue of the said act shall continue in full force, until repealed, any thing in the 16th section of the act to the contrary notwithstanding.'
 
 
 6
 This act (March 2, 1805) establishes a government for the territory of Orleans, similar to that before exercised in the Mississippi territory, (vol. 5. p. 164.) with a few exceptions. The fifth section declares that the article of the ordinance of the old congress for the government of the territory north-west of the Ohio, which prohibits slavery, is excluded from all operation within the territory of Orleans.
 
 
 7
 It was admitted that the territorial legislature had never passed any law prohibiting the importation of slaves.
 
 
 8
 It was contended by Rodney, Attorney-General, that as congress by the act of the 26th of March, 1804, prohibited the importation of slaves from foreign countries into the territory of Orleans, and as the same act expressly extends to the territory the act of the 28th of February, 1803, which forfeits the ship which imports a slave into a state where such importation is prohibited, the evident meaning and intention of congress was, to declare that the vessel should be forfeited which should import a slave into the territory of Orleans.
 
 
 9
 E. Livingston, contra, contended, that inasmuch as the territorial legislature of Orleans had never prohibited such importation, the act of the 28th of February, 1803, did not apply. If the territory is to be assimilated to a state, so as to bring the case within the spirit of the law, yet, there must have been a prohibition by the territorial legislature, to make it a parallel case.
 
 
 10
 And of that opinion was this court, the case having been submitted without argument.
 
 
 11
 Sentence reversed.